UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAVELLE W. SEARCY,
        Plaintiff

Case. No. 10-11243

    v.

Honorable John Corbett O'Meara
Magistrate Judge David R. Grand

MACOMB COUNTY JAIL,
ET AL.,
        Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANT ARAMARK CORPORATION'S MOTION FOR SUMMARY JUDGMENT (Doc. #34) AND DEFENDANTS MACOMB COUNTY JAIL AND MICHELE SANBORN'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT (Doc. #37)**

Before the court for a report and recommendation are Defendant Aramark Corporation's Motion for Summary Judgment (Doc. #34) and Defendants Macomb County Jail and Michele Sanborn's Motion to Dismiss and for Summary Judgment (Doc. #37). 28 U.S.C. §636(b)(1)(B). For the reasons discussed below, the court recommends granting both motions and dismissing Plaintiff's complaint in its entirety.

**I.  FACTS**

*Pro se* Plaintiff Lavelle Searcy was first incarcerated at the Macomb County Jail ("MCJ") in 2006 ("2006 Incarceration"), at which time he identified himself as Baptist. Doc. #37, Ex. A; Doc. #42, p. 5. Searcy claims he converted to Judaism during that incarceration, but admits that he did not request a kosher meal at any time prior to his release. Doc. #42, p. 5. After another arrest, Searcy was again incarcerated at MCJ, commencing on September 26, 2009 ("2009 Incarceration"). *Id.*; Doc. #1, p. 3. During his initial processing, Searcy identified himself as Jewish and advised that he "eats a kosher meal." Doc. #1, p. 3.

Searcy claims that during the first three weeks of his 2009 Incarceration at MCJ, he "received regular trays and low sodium trays," ate "only the fruit" and was "famished." *Id.* His complaint does not specifically allege that these meals were not kosher, nor does it give any basis by which one could reach that conclusion. *Id.* He alleges that he raised the matter at an October 19, 2009 hearing before the Hon. Peter J. Maceroni of the Macomb County Circuit Court. *Id.* Searcy claims that Judge Maceroni "requested that the jail attempt to accommodate [his] kosher diet." *Id.* Searcy claims that between October 19 and 21, 2009, he received a "'kosher deception' – a little bit of what may be kosher mixed with regular meals." *Id.*, pp. 3-4. However, he admits he knows only "[f]or the most part, [] what is kosher and what is not," and that "he does not know every single item that is kosher." *Id.*, p. 4. Nonetheless, he claims that defendants were "not aware of what a kosher diet consists [of] but had [him] labeled as a 'Vegan' (which is a vegetarian)." *Id.* Searcy claims that he attempted to "work with Defendants taking under consideration that there is a lack of knowledge," but that those attempts were "futile." Doc. #1, p. 4. Searcy claims his meals "were already poorly prepared, cold and often identical," which he contends evidences the Defendants "deliberately trying to discourage [him] [because they] did not want to accommodate the kosher diet." *Id.*

Defendant Aramark Corporation is the food service provider for MCJ. *Id.* In addition to regular meals, Aramark prepares "Scrub and Grub" meals which prisoners may purchase using money from their prison accounts. *Id.* Aramark's summary judgment motion is supported by the affidavit of its Food Service Director at MCJ, Grace Tomtishen, in which she avers that Searcy was provided kosher meals between October 19 and November 11, 2009. Doc. #34-4, Tomtishen Aff. at ¶¶6-7. *See also* Doc. #37-3, Sanborn Aff., ¶¶5-6. Tomtishen further avers that

the reason the kosher meals stopped on November 11, 2009 was because Aramark was specifically instructed to do so by Sanborn. Tomtishen Aff., ¶7; Doc. #34-5.

From a timing standpoint, it is undisputed that Sanborn instructed Aramark to stop serving Searcy a kosher diet after he had made repeated attempts to order non-kosher food from Aramark's Scrub and Grub menu between October 19 and November 10, 2009. Doc. #34-4, 34-5, 5; Doc. #1, p. 5 (admitting that he "requested scrub and grub on several occasions…"). Apparently, the last straw occurred on November 10, 2009, when Searcy placed a "Scrub-n-Grub" order for an angus cheeseburger with french fries. Doc. #34-5. The next day, Sanborn instructed Aramark to cease providing Searcy with a kosher meal due to his having ordered the non-kosher cheeseburger. Doc. #34-5; Doc. #37-3, Sanborn Aff., ¶¶8-9.[1]

Searcy then claims, quite paradoxically, that after the cancelation, it took "weeks to even get the 'kosher deception' in compliance (which still is not)." Doc. #1, pp. 5-6. He claims he "was told he could not fast unless he first consult[ed] [sic] the chaplain, then was forced to defile his body, then had to hurry to [his] cell to throw up the food." *Id.*, p. 6. Searcy claims that he filed a grievance on November 11, "to no avail." *Id.*[2] He claims that on December 2, 2009, he appeared before Judge Maceroni, "explained the matter," and "provided documentation to support his assertion." *Id.* Searcy claims that Judge Maceroni "reinstated the kosher diet," but told him "not to order scrub and grub" any more. *Id.* Two days after the hearing, Searcy claims he received a notice from the jail denying his grievance but advising him that "[p]ursuant to

---

[1] Searcy admits placing the order, but claims he did so knowing that he did not have sufficient funds to purchase the food, and certain "that he would not receive [it]," which, lacking the necessary funds, he did not. Doc. #1, at 5. He also claims Sanborn's rationale was pretext.

[2] Defendant Sanborn responded on November 19, 2009 to Searcy's grievance by stating: "the practice of religious faith is protected under the First Amendment. The right, however, to kosher meals is not absolute and your sincerity (in light of the non-kosher food order [*i.e.*, the angus cheeseburger]) is questionable. As a result your grievance was considered, but denied." Doc. # 34-5, p. 3.

3

court order we will provide you with kosher meals pending further review by corporation counsel." *Id.* Searcy does not dispute that between December 4, 2009 and his release on April 2, 2010, he received meals labeled "kosher." Doc. #1, pp. 6-7. Rather, he alleges that none actually constituted "a kosher meal, only a defiled similitude of one." *Id.* at 6. Defendants presented evidence that the meals were, in fact, kosher. Tomtishen Aff., ¶14; Sanborn Aff., ¶10;

On March 29, 2010, Searcy filed this § 1983 action, in which he claims that Defendants' actions violated his First and Fourteenth Amendment rights by allegedly "fail[ing] on a consistent basis to provide [him] with the proper kosher diet…" *Id.* at 3. He seeks in excess of $250,000 in pecuniary damages, as well as an order compelling MCJ to "make provisions for those inmates who are Jews." *Id.*, at 7. Defendants filed separate dispositive motions; Aramark moved for summary judgment (Doc. #34), and MCJ and Sanborn filed a motion to dismiss and for summary judgment (Doc. #37). Defendants principally supported their motions with evidence that Searcy received kosher meals from October 19, 2009 to November 11, 2009, and from December 4, 2009 until he left MCJ on April 2, 2010, which periods comprise the vast majority of his 2009 Incarceration. Tomtishen Aff., ¶¶6-7, 14; Sanborn Aff., ¶¶6, 10. They also argue that his receiving non-kosher meals during the few additional weeks that round out his 2009 Incarceration does not constitute a constitutional deprivation under §1983. Separately, MCJ and Sanborn argue for Eleventh Amendment immunity, and qualified immunity, respectively. Searcy responded to both motions (Doc. #s 41 and 42), and Aramark filed a reply in which the other Defendants joined (Doc. #s 45 and 47).

## II.   STANDARDS OF REVIEW

### A.   Motion to Dismiss

A motion to dismiss pursuant to Fed. R. of Civ. P. 12(b)(6) tests a complaint's legal sufficiency. Under FRCP 8(a)(2), a complaint must contain a "short and plain statement of the

4

claim showing that the pleader is entitled to relief." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (*citing Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

      In deciding whether a plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, pleadings filed by a *pro se* litigant are entitled to a more liberal reading that would be afforded to formal pleadings drafted by lawyers. *Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Despite the leniency afforded *pro se* litigants, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," to prevent such a complaint from being dismissed on grounds that it fails to sufficiently comport to basic pleading requirements. *Howard v. City of Girard, Ohio*, 346 Fed. Appx. 49, 51 (6th Cir. 2009) (citing *Twombly*, 550 U.S. at 555). Furthermore, a court is not required to "create a claim which [a plaintiff] has not spelled out in his pleading." *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). Ultimately, "[d]etermining whether a complaint states a

5

plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1949.

### B. <u>Summary Judgment</u>

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). In summary judgment proceedings, "the evidence should not be weighed, and the credibility of the witnesses should not be questioned." *In re Scrap Metal Antitrust Litigation*, 527 F.3d 517, 532 (6th Cir. 2008). Rather, in determining whether a genuine issue of material fact exists, the court must assume the truth of the non-moving party's evidence and construe all reasonable inferences from that evidence in the light most favorable to that party. *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

However, in response to a summary judgment motion, the opposing party may not rest on its pleadings nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)). Indeed, "'[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.'" *Id*. (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)). "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Id*. at 560 (citing *Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)).

### III. ANALYSIS

#### A. Searcy Failed to Raise a Material Question of Fact that *Never* Received Any Kosher Meals

Plaintiff's complaint is inconsistent and unclear with respect to his allegations about kosher meals he did or did not receive. On the one hand, he alleged that between October 19 and 21, 2009, he received a "'kosher deception' – a little bit of what may be kosher mixed with regular meals." *Id.*, pp. 3-4. However, he also alleged that "he did not receive a kosher meal" at any time during his 2009 Incarceration. *E.g.*, Doc. #41 at 4; Doc. #42 at 32 (Searcy Aff., ¶10). Giving due consideration to Searcy's *pro se* status, and taking the allegations in the light most favorable to him, the court will assume his allegation to be that he never once during his 2009 Incarceration received what he believed to be a kosher meal. Even liberally construing Searcy's complaint in that manner, his claims against Defendants fail.

Defendants provided evidence that Searcy did, in fact, receive kosher meals during the vast majority of his 2009 Incarceration. Aramark provided the affidavit of Mary Tomtishen, the company's Food Service Director Correctional Services for MCJ. (Doc. #34-4, ¶2). Ms. Tomtishen held that position at MCJ during Searcy's entire 2009 Incarceration there, and continues to be so employed. *Id.*, ¶3. She stated that Aramark was advised by MCJ to provide Searcy with kosher meals commencing on October 19, 2009, and that a "Kosher diet was provided [to him] until November 11, 2009" – the date Aramark was instructed not to provide him kosher meals due to his having ordered the non-kosher angus cheeseburger. *Id.*, ¶¶6-7, 11-12. She stated that on December 4, 2009, Searcy again began receiving "pre-packaged Kosher meal[s]" and that he continued to receive those meals until his release from MCJ on April 2,

2010. *Id.*, ¶¶13-14.[3] Tomtishen's averments are consistent with documents provided by Searcy, including Aramark's "Kosher Menu" and "General Kosher Procedures," the latter of which specifically instruct that "kosher meals must be stored, cooked, and served sealed. Do not use meals that are served unsealed." Doc. #42 at 23-24.

In response to Defendants' motions, Searcy failed to present any evidence whatsoever to support his contention that the meals he received during those periods were not kosher. Instead, he simply stated that the meals were "'deceptive' kosher meals" that were "cold, defiled and primarily no different than the general populations [sic] meals." *Id.* at 5. But those kinds of self-fulfilling, conclusory assertions are an inadequate response to the Defendants' evidence. *Alexander*, 576 F.3d at 558, 560; *Street*, 886 F.2d at 1479.[4]

Searcy's only argument responsive to this point is that he "has been in the kosher program long enough to know what foods are kosher and what foods are not kosher," and asserting, in conclusory fashion, that the meals he received were "switched general population meals." Doc. #42 at 5. The court must reject Searcy's attempt to bootstrap his claim by serving as his own kosher food "expert." First, his purported experience in the "kosher program" is belied by his admission that his first request for a kosher meal was in connection with his 2009 Incarceration at MCJ – the very facility he claims never provided a legitimate kosher meal. *Id.* (noting that he "never demanded a kosher meal … from [his] 2006 incarceration [at MCJ]"). Second, Searcy admitted, both in his complaint and in his briefs, that his knowledge of what is

---

[3] Similarly, Sanborn provided an affidavit attesting that MCJ provided kosher meals to Searcy during these dates. Doc. #37-3, Sanborn Aff., ¶¶6-10.

[4] The court rejects any attempt by Searcy to blame his lack of documentary proof on Defendants' alleged failure to cooperate in discovery. *E.g.*, Doc. #42 at 32, ¶16. This case is almost two years old, discovery was due by August 1, 2011 (Doc. #32), and Searcy filed no motion to compel. Moreover, Searcy he admits receiving Defendants' initial disclosures, which included his "grievances, complaints…and constant contact with food services." Doc. # 42, p. 12.

and is not "kosher" is not complete. *See e.g.*, Doc. #1 at 4 (stating that "[f]or the most part, [he] knows what is kosher and what is not," and admitting that "he does not know every single item that is kosher."); Doc. #42 at 5 (admitting that he does not know "every single law, item or detail" about "what foods are kosher and what foods are not kosher."). Finally, Searcy never explains *why*, specifically, he believes the meals he received were not kosher. Again, this renders his position nothing more than "[c]onclusory statements unadorned with supporting facts," which are "insufficient to establish a factual dispute that will defeat summary judgment." *Alexander*, 576 F.3d at 560. Thus, Searcy's claims cannot proceed with respect to his allegations that he "never" received a kosher meal during his 2009 Incarceration.

### B. Any Denial of Kosher Meals to Searcy Was Not Wrongful and Did Not Constitute a Serious Deprivation of His Constitutional Rights

Nor can Searcy prevail by focusing his case on the few weeks when Defendants admit he did not receive kosher meals.

Any denials of kosher meals to Searcy were not wrongful. As to Aramark, Searcy provided no basis for holding it responsible for his not receiving kosher meals at the outset of his 2009 Incarceration or during the brief period of time after the angus cheeseburger incident. It is the MCJ and its officials who make decisions about prison life, including what prisoners are entitled to special diets. Aramark, as the MCJ's food service provider, simply fills the meal orders as directed by the jail, and it is undisputed that the times when Aramark did not provide kosher meals to Searcy it was because it had been told to provide him with the jail population's regular meals. Tomtishen Aff. at ¶4. While there may be instances in which "just following orders" is not a defense to an otherwise valid §1983 claim, *see* Doc. #41 at 5 (citing *Kyle v. Holina*, 2009 WL 1867671, at *2 (W.D. Wisc. Jun. 29, 2009), this is not such a case because Searcy presented no evidence from which one could conclude that Aramark should have

9

questioned the validity of MCJ's orders. *See e.g., O'Rourke v. Hayes*, 378 F.3d 1201, 1210, n. 5 (11th Cir.2004) ("the 'just following orders' defense has not occupied a respected position in our jurisprudence and officers in such cases may be held liable under § 1983 *if there is a reason why any of them should question the validity of that order*") (emphasis added) (citation and punctuation omitted).

Similarly, Searcy cannot prevail on his claims against MCJ or Sanborn because valid grounds existed for not ordering him kosher meals during the brief periods in question. First, it is undisputed that during his 2006 Incarceration at MCJ, Searcy did not identify as Jewish and did not request kosher meals. MCJ therefore had a valid reason for reviewing Searcy's request for such food upon his return to MCJ. *See Cutter v. Wilkinson*, 544 U.S. 709, 725 n. 13 (2005) ("prison officials may appropriately question whether a prisoner's religiosity, asserted as a basis for a request for accommodation, is authentic" and whether his "professed religiosity" is "sincere"); *Dehart v. Horn*, 227 F.3d 47, 52, n. 3 (3rd Cir. 2000) ("if a prisoner's request for a particular diet is not the result of sincerely held religious beliefs, the First Amendment imposes no obligation on the prison to honor that request… Prison officials are, of course, entitled both to make a judgment about the sincerity and religious nature of an inmate's belief when he or she asks for different treatment and to act in accordance with that judgment."). And, at least according to the Defendants' evidence which Searcy failed to rebut, they did perform a prompt review of his request, and did provide him with kosher meals only a few weeks after his 2009 Incarceration began. Sanborn Aff., ¶5. Similarly, MCJ and Sanborn had valid reasons for stopping Searcy's kosher meals (again for only a few-week period) based on his ordering of non-kosher Scrub and Grub food, including the angus cheeseburger. Doc. #34-5; Sanborn Aff., ¶¶ 7-9; *Cutter*, 544 U.S. 725, n. 13; *Dehart*, 227 F.3d at 52, n. 3.

Searcy's counter-argument on this last point lacks merit.  First, Searcy's argument that "Defendants never sent [him] any notice stating that the scrub and grub is not kosher" fails because it was he who affirmatively ordered a non-kosher angus cheeseburger.  Doc. 34-5.  Second, Searcy's argument that he was forced to order non-kosher meals like the angus cheeseburger due to the "enormous substantial pressure Defendants placed upon [him]" by not giving him kosher meals, Doc. #42 at 6-7, is belied by his claim that he ordered the food certain "that he would not receive [it]."  Doc. #1 at 5.  It also makes no sense for Searcy to claim that he was forced to order additional non-kosher meals because eating the non-kosher ones provided by Defendants would result in him "defiling" himself.  Doc. #1 at 6; Doc. #42 at 2.  Finally, the court rejects Searcy's argument that his ordering (and eating, if he had received) the non-kosher Scrub & Grub meals "would not equate to insincerity, it would just mean that [he] is a sinner." *Id.* at 7.  The salient question is not how Searcy believes his conduct would impact his religious standing, but rather, the objective impression his ordering such a meal gave to prison officials about the sincerity of his purported requirement for kosher meals.  *Cutter*, 544 U.S. 725, n. 13; *Dehart*, 227 F.3d at 52, n. 3.

Finally, to the extent Searcy has alleged a possible Eighth Amendment claim, he has not shown a deprivation of sufficient magnitude to prevail on it.  Sixth Circuit law makes clear that the deliberate and unnecessary withholding of food that is essential to normal health can constitute the deliberate indifference to medical needs that violates the Eighth Amendment.  *See Cunningham v. Jones*, 567 F.2d 653, 656 (6th Cir.1977).  To establish such a claim, Searcy was required to show that Defendants acted with "deliberate indifference" to his basic needs.  "Deliberate indifference" is comprised of both an objective and a subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 835-57, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  The objective

component requires that the deprivation alleged be "sufficiently serious," while the subjective component requires a plaintiff to establish that the government officials had a "sufficiently culpable state of mind." *Id.* at 834.

Here, Searcy cannot meet either prong. He presented no *evidence* that he ever suffered any serious physical ailment from the alleged denial of kosher foods, and his challenge to the general population meals being cold, poorly-prepared and lacking in variety does not meet the seriousness standard. *Kelly v. McLain*, No. 08-cv-10448, 2008 WL 4791951, at *3 (E.D. Mich. Oct. 28, 2008) ("Food served to inmates need not be appetizing. The Eighth Amendment merely requires that it be prepared and served in a sanitary environment and that it be adequate to meet an inmate's essential nutritional needs.") (citing *Heinz v. Teschendorf*, No. 05-cv-73470, 2006 WL 2700813, at *8-9 (E.D.Mich.2006); *see also U.S. v. Michigan*, 680 F.Supp. 270, 275 (W.D. Mich. 1988)). For the reasons stated above, Defendants all had valid reasons for not providing Searcy with kosher meals during the brief periods of time in question, and there is no evidence that they were aware of any ill health on Searcy's part due to the diet he was receiving. Thus, none of them can be said to have acted with "deliberate indifference" to his alleged needs. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (to satisfy the subjective prong, plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

    **C.**    **Defendants Are Entitled to Immunity From Searcy's Suit**

        **i.**    **MCJ is Entitled to Eleventh Amendment Immunity**

It is well established that the Eleventh Amendment bars suits for money damages in federal court against a state unless the state has waived its sovereign immunity or unequivocally

consented to be sued. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 98-100 (1984); *Abick v. Michigan*, 803 F.2d 874, 876-77 (6th Cir. 1986). The state's sovereign immunity extends to "state instrumentalities," *Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997), which clearly includes MCJ. *Albert v. Bureau of Health Care Servs.*, No. 08-13884, 2009 WL 2591627, at *6 (E.D. Mich. Aug. 18, 2009). In addition, 42 U.S.C. § 1983 requires that the defendant to a civil rights action be a "person," which MCJ is not. *Lapides v. Bd. of Regents,* 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police,* 491 U.S. 58, (1989); *Parker v. Mich. Dep't. of Corr.*, 65 Fed. Appx. 922, 923 (6th Cir. 2003).

Searcy does not dispute any of this, but argues that he may maintain his suit against MCJ "under the 'Policy Requirement', if the constitutional violation resulted from a municipal policy or custom." Doc. #41 at 2. He argues that "the [MCJ] has 'selective' religious preferences that they [sic] favor, support, and cater to, and the Jewish religion does not fit into that scheme…" *Id.* He claims that he "constantly questioned [the MCJ's] customs and policies during his entire stay and found that Defendants [sic] actions violated the constitution." *Id.* That argument lacks merit.

A municipal custom is "a widespread practice that ... is 'so permanent and well settled as to constitute a custom or usage with the force of law.'" *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)) (internal quotations omitted). However, as with any claim, Searcy cannot simply allege such a custom, but must do so with sufficient specificity and "factual content" to meet the pleading standards discussed above. *Iqbal*, 129 S.Ct. at 1949. And, at the summary judgment stage, once the Defendants present evidence that no such policy exists, Searcy needed to come forward with evidence to support his position. *Alexander*, 576 U.S. at 558, 560. He failed in both respects.

MCJ is entitled to dismissal under Rule 12(b)(6) because Searcy has not sufficiently alleged the existence of any custom or policy implemented by MCJ (or any other Defendant). Rather, he makes only conclusory accusations of an anti-Jewish environment at the MCJ based on his claim that he did not receive kosher meals he had requested. Such allegations do not allege a sufficiently pervasive "policy" to be actionable under *St. Louis*, 485 U.S. at 127; *Howard*, 346 Fed. Appx. at 51. *See also Nasious v. Robinson*, 2010 WL 1268135, at *7 (D. Colo. Feb. 17, 2010) (isolated incidents of denying prisoners kosher meals were "insufficient to evidence a widespread practice constituting a custom with the force of law for Section 1983 municipal liability purposes.") And, even if Searcy could overcome the motion to dismiss, as discussed above, he failed woefully to present any actual evidence he was wrongfully denied any kosher meals, let alone that there existed a policy or custom of animus towards Jewish inmates in general. Such conclusory, unsupported allegations of an anti-Jewish "policy" do not satisfy Searcy's obligations under the summary judgment standards discussed above. *See, e.g.*, *Alexander*, 576 F.3d at 558, 560; *Nasious*, 2010 WL 1268135, at *7 (plaintiff's "repeated allegation that he and other Jewish inmates were 'continually' denied Kosher meals is insufficient to create a genuine factual issue because it is conclusory and lacks factual support.").[5]

### ii. Sanborn is Entitled to Qualified Immunity

To prevail on his § 1983 claims, Searcy must show that Sanborn violated one of his constitutional rights. *See Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir.2008) ("In order to prevail on a civil rights claim under 42 U.S.C. § 1983, plaintiffs must establish that a person

---

[5] Additionally, Searcy admits that to prevail under his "Policy Requirement" argument, "'fault' must be shown on the part of the municipality." Doc. #41 at 2. For the same reasons discussed above, he failed to make such a showing.

14

acting under the color of state law deprived them of a right secured by the Constitution or laws of the United States."). However, state employees are entitled to qualified immunity from such suits if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *See id.* (citation omitted).

The doctrine of qualified immunity, "shields 'governmental officials performing discretionary functions ... from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 172 (6th Cir.2004) (quoting Anderson v. Creighton, 483 U.S. 635, 638 (1987)). Courts apply a two-tiered inquiry to determine whether a defendant is entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The first step is to determine whether "the facts alleged show the officer's conduct violated a constitutional right[.]" *Id.* at 201. If such a constitutional violation is shown, the court also considers "whether the right was clearly established." *Id.* To meet that standard, the right's "contours []must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Id.* The applicable laws must "both point unmistakably to the unconstitutionality of the conduct complained of and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting." *Allison v. Martin*, 2011 WL 6217425, at *4 (E.D. Mich. Dec. 14, 2011) (citing *Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir.1996). Moreover, as the Plaintiff in this case, Searcy bears the burden of proving that Sanborn is not entitled to qualified immunity. *Saucier*, 533 U.S. at 201; *Garretson v. City of Madison Heights*, 407 F.3d 789, 798 (6th Cir. 2005) (noting that the plaintiff "bears the ultimate burden of proof to show that the individual officers are not entitled to qualified immunity.").

The discussion above about the shortcomings of Searcy's pleadings and proofs make clear that he failed to meet his burden as to qualified immunity. Searcy clearly failed to establish that any constitutional violation occurred. And, even if Sanborn should not have restricted Searcy from kosher meals at any point during his 2009 Incarceration, there existed sufficient law from which she reasonably could have concluded that she had a right to investigate the sincerity of Searcy's request for such meals, and to act when he gave her legitimate reason to doubt his sincerity. *E.g.*, *Cutter v. Wilkinson*, 544 U.S. at 725 n. 13. Accordingly, Sanborn's conduct did not violate any "clearly established" right and she is entitled to qualified immunity. See also *Allison*, 2011 WL 6217425, at *6 ("At the time of the events in the instant case, there was no clearly established law from the Sixth Circuit or the United States Supreme Court holding unconstitutional the Michigan Department of Corrections' policy of questioning prospective Kosher diet participants about their religion in order to test the prisoner's sincerity to abide by Kosher law."). Accordingly, Sanborn is entitled to qualified immunity.

## IV.  CONCLUSION

For the foregoing reasons, Defendants have established their entitlement to a dismissal of each of Searcy's claims for damages and injunctive relief. He failed to sufficiently allege or prove a violation of his constitutional rights, either directly or through an unlawful policy or custom. Accordingly, the court RECOMMENDS that Defendant Aramark Corporation's Motion for Summary Judgment (Doc. #34) be GRANTED, that Defendants Macomb County Jail and Michele Sanborn's Motion to Dismiss and for Summary Judgment (Doc. #37) be GRANTED, and that Searcy's complaint be DISMISSED in its entirety.

Dated: March 13, 2012                               s/David R. Grand
Ann Arbor, Michigan                                 DAVID R. GRAND
                                                    United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to file objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the undersigned Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may file a response within fourteen (14) days of its service with a copy of another party's objections. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). It is recommended that any such response be concise, but commensurate in detail with the objections, and that it address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that, on March 13, 2012, the foregoing document was served upon counsel of record using the ECF system and upon Plaintiff at 6902 Chicago Road, Warren, Michigan 48091 by first-class U.S. mail.

                                      s/William Barkholz for Felicia M. Moses
                                      CASE MANAGER